| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | Case Type: Personal Injury |

| | |
|---|---|
| Virgil Lee Jackson Jr.,<br>　　　　　Plaintiff,<br>vs.<br>City of Minneapolis and Does 1-20, in their official and individual capacities,<br>　　　　　Defendants. | Court File Number: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## INTRODUCTION

1. On May 30, 2020, the Plaintiff in this case, Virgil Lee Jackson Jr. ("Plaintiff") was in a parking lot in Minneapolis when another individual, Jaleel Stallings ("Stallings"), fired in self-defense toward an unmarked Minneapolis Police Department ("MPD") van, which Stallings did not realize contained police officers.

2. Although Plaintiff subsequently went down on his knees and put his hands up, well before MPD officers reached him, MPD officers beat and Tased Plaintiff for approximately two minutes.

3. The MPD officer who repeatedly Tased Plaintiff was using the Taser in "drive stun" mode. When the cartridge is removed, a Taser may be operated in drive stun mode and used as a pain compliance tool. In drive stun mode, the Taser's electrical probes are applied directly to a person's body, causing incapacitating pain.

4. This repeated deployment of a Taser in drive stun mode on Plaintiff's body constituted torture – the "infliction of intense pain to the body . . .

Exhibit 2

to punish . . . or to obtain sadistic pleasure." *See* BLACK'S LAW DICTIONARY 1528 (8th ed. 2004).

5. MPD officers violated Plaintiff's Fourth Amendment rights by using excessive force during the encounter on May 30, 2020.

## PARTIES

6. Plaintiff Virgil Jackson Jr. is a resident of Minnesota.
7. Defendant City of Minneapolis is a municipality incorporated in the State of Minnesota.
8. Defendants Does 1-10 are unidentified individuals who committed the excessive force set forth in this Complaint as agents or employees of Defendant City of Minneapolis. Plaintiff is suing them in their official and individual capacities.
9. Defendants Does 11-20 are unidentified individuals who failed to intervene, with regard to the excessive force used on Plaintiff, while working as agents or employees of Defendant City of Minneapolis. Plaintiff is suing them in their official and individual capacities.

## JURISDICTION

10. This is an action for damages under 42 U.S.C § 1983 and 1988, and Minnesota common law. This Court has jurisdiction over this matter pursuant to Minn. Stat. § 484.01 *et seq.* Venue lies properly in Hennepin County, Minnesota pursuant to Minn. Stat. § 542.01 *et seq.*, as the events giving rise to this action occurred in Hennepin County.

## BACKGROUND

11. After Stallings fired in self-defense toward an unmarked MPD van on May 30, 2020, MPD officers exited the van.
12. Plaintiff went down on his knees and put his hands up well before MPD officers reached him.

Exhibit 2

13. Yet Does 1-10 gratuitously beat and Tased Plaintiff for approximately two minutes.
14. Case law has clearly established that the use of a Taser on a non-fleeing, non-violent suspected misdemeanant is unreasonable. *See, e.g., Johnson v. McCarver*, 942 F.3d 405, 412 (8th Cir. 2019); *Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).
15. As of May 30, 2020, MPD officers had a duty "to either stop or attempt to stop another sworn employee when force is being inappropriately applied or is no longer required."
16. During Plaintiff's arrest, nearby MPD officers – Does 11-20 – saw and/or heard that Plaintiff had surrendered and that force against him was not required as Does 1-10 started and continued to beat and Tase Plaintiff.
17. Yet Does 11-20 did not stop or attempt to stop such excessive force.
18. Doe 10 also stole Plaintiff's cell phone.
19. Plaintiff did not pose a threat, much less an immediate threat, to the safety of any MPD officers or others on May 30, 2020.
20. Plaintiff did not resist arrest on May 30, 2020.

## *MONELL* ALLEGATIONS

21. As of May 30, 2020, Defendant City of Minneapolis had a custom of using excessive force in violation of the constitutional rights of people actually or perceived to be participating in protests, including but not limited to the George Floyd protests between approximately May 26, 2020 and June 1, 2020 (the "George Floyd protests"). Many instances of excessive force during the George Floyd protests have been documented in other lawsuits. *See, e.g., Goyette v. City of Minneapolis*, Civ. No. 20-

Exhibit 2

1302 (WMW/DTS) (putative class action with six named plaintiffs); *Williams v. City of Minneapolis*, Civ. No. 20-1303 (DSD/BRT); *Tirado v. City of Minneapolis*, Civ. No. 20-1338 (JRT/ECW) (alleging blindness in one eye); *Armstrong v. City of Minneapolis*, Civ. No. 20-1645 (SRN/DTS) (putative class action with five named plaintiffs); *Samaha v. City of Minneapolis*, Civ. No. 20-1715 (SRN/DTS) (putative class action with seven named plaintiffs); *Marks v. City of Minneapolis*, Civ. No. 20-1913 (ADM/ECW) (alleging blindness in one eye); *Cisneros v. City of Minneapolis*, Civ. No. 20-1957 (PJS/BRT) (alleging injuries related to being shot with a projectile near the eye); *Stevenson v. City of Minneapolis*, Civ. No. 20-2007 (SRN/TNL) (alleging blindness in one eye); *Wright v. Macias*, Civ. No. 21-510 (WMW/LIB) (alleging permanent eye injury); *Larson v. City of Minneapolis*, Civ. No. 21-714 (ECT/HB); *Gelhaye v. John Doe 1*, Civ. No. 21-1585 (ECT/BRT); *Stallings v. Bittell*, Civ. No. 21-2395 (ADM/TNL).

22. This custom caused or contributed to the violation of Plaintiff's rights discussed in this Complaint.

23. As of May 30, 2020, Defendant City of Minneapolis had also failed to train, supervise, and discipline its officers, agents, and employees to an extent that amounted to "deliberate indifference" to the rights of people actually or perceived to be participating in protests, including but not limited to the George Floyd protests.

24. This failure to train, supervise, and discipline emboldened MPD officers to act without regard for the rights of protesters or people perceived to be protesters during the George Floyd protests, and caused or contributed to the violation of Plaintiff's rights discussed in this Complaint.

Exhibit 2

25. In addition, as of May 30, 2020, MPD had custom, sometimes referred to as the "code of silence," which made it obvious to MPD officers that it was highly unlikely they would be disciplined in a meaningful way, much less terminated, for using excessive force against people actually or perceived to be participating in protests, including but not limited to the George Floyd protests (where it was difficult at times for civilians to determine which agency each law enforcement officer was employed by).

26. This "code of silence" contributed to the unlawful acts of violence against Plaintiff.

### FIRST CAUSE OF ACTION
*Excessive Force in Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments*
*Against Does 1-10*

27. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.

28. The use of force by Does 1-10 violated Plaintiff's Fourth Amendment rights.

29. Plaintiff was not posing a threat to the safety of MPD officers or others, had not committed any severe or violent crime, and was neither actively resisting arrest nor attempting to evade arrest by flight. In light of the relationship between the need, if any, for the use of force and the amount of force used, (1) the extent of the harm to Plaintiff, (2) the inadequacy of the efforts, if any, by Does 1-10 to temper or limit the amount of force used against Plaintiff, (3) the absence of a security problem posed by Plaintiff, (4) the absence of conduct from Plaintiff that was capable of being reasonably perceived by Does 1-10 as a threat, and (5) the absence of efforts by Does 1-10 to arrest Plaintiff

Exhibit 2

met with active resistance, the use of excessive force against Plaintiff by Does 1-10 was objectively unreasonable.

30. Does 1-10 acted under color of law.

31. The actions of Does 1-10 constituted an unlawful seizure in violation of Plaintiff's Fourth Amendment rights.

32. Does 1-10 willfully engaged in this unconstitutional conduct.

33. As a direct and proximate result of this violation of Plaintiff's constitutional rights, Plaintiff suffered harm.

## SECOND CAUSE OF ACTION
*Failure to Intervene in Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments*
*Against Does 11-20*

34. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.

35. The failure to intervene by Does 11-20 violated Plaintiff's Fourth Amendment rights.

36. As of May 30, 2020, case law clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment. *See, e.g., Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009); *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

37. Does 11-20 acted under color of law.

38. The actions of Does 11-20 constituted an unlawful failure to intervene in violation of Plaintiff's Fourth Amendment rights.

39. Does 11-20 willfully engaged in this unconstitutional conduct.

40. As a direct and proximate result of this violation of Plaintiff's constitutional rights, Plaintiff suffered harm.

Exhibit 2

## THIRD CAUSE OF ACTION
### *State Law Claim – Assault*
### *Against Defendant City of Minneapolis*

41. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
42. The use of excessive, unprovoked, and unreasonable force against Plaintiff by Does 1-10 was intended to cause imminent harmful and offensive contact.
43. Plaintiff had a reasonable apprehension and fear that law enforcement using excessive force on him would and did occur.
44. Does 1-10 had the apparent ability to cause Plaintiff harm.
45. The actions described above by Does 1-10 were unlawful and unjustified.
46. Moreover, Does 1-10 acted with malice as it is defined in the context of official immunity, because they intentionally committed these acts, which they had reason to believe were legally prohibited.
47. Defendant City of Minneapolis is vicariously liable for the acts described above by Does 1-10, as these acts were committed in the scope of their employment.
48. As a direct and proximate result of these actions, Plaintiff suffered harm.

## FOURTH CAUSE OF ACTION
### *State Law Claim – Battery*
### *Against Defendant City of Minneapolis*

49. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
50. Does 1-10 intentionally caused harmful or offensive contact with Plaintiff as described above.

7

Exhibit 2

51. Moreover, Does 1-10 acted with malice as it is defined in the context of official immunity, because they intentionally committed these acts, which they had reason to believe were legally prohibited.
52. Defendant City of Minneapolis is vicariously liable for the acts described above by Does 1-10, as these acts were committed in the scope of their employment.
53. As a direct and proximate result of such actions, Plaintiff suffered harm.

### FIFTH CAUSE OF ACTION
*Conversion*
*Against Defendant City of Minneapolis*

54. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
55. By the conduct detailed above, Doe 10 acted in a manner contrary to Plaintiff's personal property rights.
56. By the conduct detailed above, Doe 10 intentionally deprived Plaintiff of possession of his personal property, specifically his cell phone.
57. Moreover, Doe 10 acted with malice as it is defined in the context of official immunity, because Doe 10 intentionally committed this act, which Doe 10 had reason to believe was legally prohibited.
58. Defendant City of Minneapolis is vicariously liable for the acts described above by Doe 10, as these acts were committed in the scope of Doe 10's employment.
59. The actions of Doe 10 caused Plaintiff to suffer harm, including but not limited to loss of his personal property.

Exhibit 2

## SIXTH CAUSE OF ACTION
*Negligence Per Se – Civil Theft in Violation of Minn. Stat. § 604.14*
*Against City of Minneapolis and Doe 10*

60. Plaintiff restates the preceding paragraphs as if fully stated herein.

61. Doe 10 unlawfully took and deprived Plaintiff's personal property in violation of Minn. Stat. § 604.14, and has no intention of returning the personal property.

62. Defendant City of Minneapolis is vicariously liable to Plaintiff for this theft by Doe 10, as it was committed in the scope of Doe 10's employment.

63. The actions of Doe 10 caused Plaintiff to suffer harm, including but not limited to loss of his personal property.

## SEVENTH CAUSE OF ACTION
*Civil Rights Violations – Monell v. Dept. of Social Services*
*Against Defendant City of Minneapolis*

64. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.

65. Before May 30, 2020, Defendant City of Minneapolis, with deliberate indifference to the rights of people including Plaintiff, initiated, tolerated, permitted, failed to correct, promoted, and/or ratified a custom on the part of MPD officers, including Does 1-20, of deliberate indifference toward the use of excessive force against people actually or perceived to be engaged in protest, which is manifested in the failure to adequately investigate excessive force against such individuals, and the failure to adequately train, supervise, and discipline MPD officers discussed above.

66. Through Defendant City of Minneapolis, and with its ratification and approval, by failing to train, supervise, and discipline MPD officers

Exhibit 2

consistently on this point, there has been an approval of a custom of unconstitutional and excessive force with regard to people actually or perceived to be protesting, including but not limited to during the George Floyd protests.

67. Defendant City of Minneapolis acted with deliberate indifference to the constitutional rights of people actually or perceived to be protesting, as evidenced by the recurring use of excessive force against them, both during and before the George Floyd protests.[1]

68. Defendant City of Minneapolis has a custom of targeting people actually or perceived to be protesting, including but not limited to during the George Floyd protests, by using excessive force without justification or warning. A pattern of such violations prior to the evening of May 30, 2020 put Defendant City of Minneapolis on notice that its training, supervision, and/or discipline were deficient.

69. Defendant City of Minneapolis has failed to supervise, train, and discipline MPD officers with regard to this wrongful conduct. Indeed, Defendant City of Minneapolis has failed to adequately train, supervise, and discipline MPD officers with regard to the use of objectively unreasonable force against people actually or perceived to be

---

[1] *See, e.g.*, Liz Sawyer and Libor Jany, *Complaints skyrocket over police response to George Floyd protests*, Star Tribune, July 2, 2020, https://www.startribune.com/complaints-skyrocketing-in-wake-of-mpls-police-response-to-floyd-protests/571608232/ ("Some of the criticism leveled at the [Minneapolis Police Department] echoed complaints made after the 18-day occupation of the Fourth Precinct police station that followed the 2015 killing of Jamar Clark. A federal after-action report found numerous instances in which officers used 'less-lethal and nonlethal weapons' on protesters during the occupation, in clear violation of department policies, and often failed to document their actions. Federal officials also recommended that the department 'strengthen, train on, adhere to and enforce the use of force policy . . . .'").

Exhibit 2

protesting even after reports of this violative conduct circulated widely. This custom of excessive force against people actually or perceived to be protesting was the moving force behind the constitutional violations that harmed Plaintiff.

70. This custom corroborates Defendant City of Minneapolis' deliberate indifference to violations of the constitutional rights of protesters or people perceived to be protesters, including Plaintiff.

71. Defendant City of Minneapolis' failure to adequately train, supervise, and discipline MPD officers regarding people's First and Fourth Amendment rights, even after many constitutional violations of the kind described in the preceding paragraphs came to light, also corroborates the deliberate indifference of Defendant City of Minneapolis to violations of the constitutional rights of protesters or people perceived to be protesters, including Plaintiff.

72. Plaintiff's injuries were directly and proximately caused by the aforementioned acts and omissions and by Defendant City of Minneapolis' custom of excessive force against people actually or perceived to be protesters.

## JURY DEMAND

73. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

Plaintiff requests relief as follows:

1. Compensatory damages against Defendants, jointly and severally, in an amount exceeding $50,000;
2. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;
3. Punitive damages against Does 1-20;
4. Prejudgment interest; and

Exhibit 2

5. Such other further relief as this Court may deem just and proper.

Dated: February 7, 2022

*/s/ Tim Phillips*

Tim Phillips (#390907)
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

**ATTORNEY FOR PLAINTIFF**

### ACKNOWLEDGEMENT REQUIRED BY MINN. STAT. § 549.211

Plaintiff, through undersigned counsel, acknowledges that sanctions, attorneys' fees, and witness fees may be imposed under Minn. Stat. § 549.211.

Dated: February 7, 2022

*/s/ Tim Phillips*

Tim Phillips (#390907)
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

**ATTORNEY FOR PLAINTIFF**

Exhibit 2